### VALVONA–MARCHIONY CO. v. SILVERSTEIN et al.

#### (Circuit Court, D. Massachusetts. August 17, 1910.)

#### No. 759.

1. PATENTS (§ 328*)—VALIDITY—MOLDS FOR BISCUIT CUPS.

    Valvona patent, No. 701,776, for a mold and oven for baking biscuit cups to be used to hold ice cream, *held* valid.

2. PATENTS (§ 301*)—INFRINGEMENT—PRELIMINARY INJUNCTION.

    A preliminary injunction will not ordinarily be granted in a suit to restrain the infringement of a patent, if there is any substantial doubt as to the validity of the patent or the infringement; nor will a pre-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

liminary injunction be as readily granted against a mere user as against a maker or seller of the patented invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 489–495; Dec. Dig. § 301.*]

3. PATENTS (§ 301*)—INFRINGEMENT—PRELIMINARY INJUNCTION.

Where, in a suit against a mere user of an alleged infringing patented invention, there was doubt as to whether an infringement in fact existed, and there was ground to believe that defendant's use of the appliance, if unlawful, had been to some extent induced by complainant's delay in asserting its rights, a preliminary injunction will not be granted.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 489–495; Dec. Dig. § 301.*

Grounds for denial of preliminary injunctions in patent infringement suits, see note to 72 C. C. A. 123.]

In Equity. Suit by the Valvona-Marchiony Company against Moses Silverstein and others to restrain infringement of a patent. On motion for a preliminary injunction. Denied.

N. N. Jones, of Boston, Mass., for complainant.
William Charak, of Boston, Mass., for defendant.

DODGE, District Judge. This suit is for alleged infringement of United States letters patent No. 701,776, issued June 2, 1902, to Antonio Valvona of Manchester, England.

[1] In Valvona v. D'Adamo (C. C.) 135 Fed. 544, this patent was held valid on final hearing by the Circuit Court in the Eastern District of Pennsylvania. This decision was on February 24, 1905. No appeal was taken, and the validity of the patent does not appear to have been elsewhere or since in dispute. I must regard its validity as not open to question in this hearing.

Coming to the question of infringement, it is clear that the scope of the patent is a narrow one. The record in Valvona v. D'Adamo is before me, and in it are contained the proceedings in the Patent Office while the application for the patent was there pending. There were five amendments of the original application. The patent was not granted until the claims had been limited to an apparatus in which "all the heat absorbing and conducting sides of the mold are of substantially the same thickness." Without this limitation the alleged invention was regarded as anticipated by various forms of waffle irons, with which it was classed by the Patent Office.

The bill charges the defendants with having made or caused to be made for their use, and with having sold to others, a large number of infringements upon the patent. The complainant's affidavits show only that Louis Hahn, who has since become a licensee under the patent, was using in March, 1909, certain devices for baking biscuit cups for ice cream, two of which, marked A and B, were produced in court; that, also in March, 1909, Nathan Werlinsky, then in Hahn's employ, had six similar devices made, which he sold to the defendants; that in October, 1909, Werlinsky had six other similar devices made and sold them also to the defendants; and that the de-

fendants have been using the devices thus acquired by them, or devices similar thereto, in baking biscuit cups for ice cream in their factory. There is nothing to support the allegation that the defendants themselves make the infringing devices, or that they sell them. The defendants are, on the affidavits, mere users, at most, of the patented device.

Whether the devices A and B infringe the patent in suit seems to me a question of some doubt. They do not very closely resemble the device shown in the patent itself. The cores and dies are so shaped as to make conical cups, in this respect resembling the cores and dies shown in the Swiss patent to J. Aegeter, discussed in the opinion in Valvona v. D'Adamo. It is true that the patent in suit states that the cups or dishes produced may be either of the shape shown in the attached drawings or "of other preferred pattern according to the shape of the cores and dies employed." But it seems to me not equally true of the devices A and B as of the device described in the patent that all the heat absorbing and conducting sides of the mold are of substantially the same thickness. If this is true of that part of the mold containing the dies, it is far from being equally true of that part which contains the cores, and the "mold" consists of both parts connected by a hinge.

It appears from the defendants' affidavits that molds like A and B have been in use for several years prior to the filing of this bill by persons engaged in baking cups of this kind in or near Boston; that the molds so used have been made by persons other than the complainant, and have not been understood to be covered by any patent; also that such use goes back as far as 1905. And, in the complainant's supplementary affidavits, Louis Hahn, above referred to, states that he bought such a mold in 1904 of a person whose name he cannot recall, had duplicates of it made, thereafter used them in his manufacture of cups, and did not know until June, 1909, of any patent claimed to cover them. He was then notified by the complainant that he was infringing, and in consequence secured a license from it.

If there has been a use of molds like A and B since 1904 or 1905, such as these affidavits indicate, the complainant, it would seem, might easily have become aware of it. It describes itself in its bill as a corporation under New York laws, and as having its principal place of business in New York City; but there is hardly enough in these allegations to show that reasonable activity on its part would not have disclosed to it what was being done by persons in the business in this vicinity. More than a year before this bill was filed, it became aware of what Hahn was doing. Hahn is of Cambridge, and, according to Werlinsky's affidavit, carried on business as the Central Biscuit Company of Boston. There is nothing to show that the use of the molds by persons in this neighborhood, other than Hahn, might not have been just as easily ascertained. Hahn had continued his use of the molds, without objection, for four years after the decision in Pennsylvania before the complainant undertook to treat him as an infringer. The defendants got their molds from Hahn's employé during this interval, and have been using them without objection for a year since the notice to Hahn.

[2, 3] Preliminary injunctions have not ordinarily been granted by this court, if there is any substantial doubt regarding either the validity of the patent or infringement. Nor is a preliminary injunction so readily granted against a mere user as against a maker or seller of the patented invention. No exceptional reasons are alleged in this case sufficient to require any departure from these rules. In view of the doubt existing upon the question of infringement, and the reasons which appear for believing that the defendants' use of the mold, if unlawful, has been to some extent induced by the complainant's delay in asserting its rights, I think no injunction should issue before final hearing.

Motion denied.